IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER L. B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-188-JFJ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Christopher L. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(1)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

On January 8, 2018, Plaintiff, then a 45-year-old male, applied for disability insurance benefits under Title II of the Social Security Act. R. 12, 151-54. Plaintiff alleges that he has been unable to work since March 31, 2016, due to problems associated with his cervical spine and lumbar spine. R. 151, 174. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 56-76. ALJ Luke Liter conducted an administrative hearing and issued a decision on July 26, 2019, denying benefits and finding Plaintiff not disabled. R. 15-20, 27-55. The Appeals Council denied review, and the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. R. 1-6; 20 C.F.R. §§ 404.981, 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from his alleged onset date of March 31, 2016, through his date last insured of March 31, 2017. R. 17. Although the ALJ found that Plaintiff had the medically determinable impairments of "degenerative disc disease of the cervical spine status post anterior cervical discectomy and fusion and lumbar stenosis" at step two, he concluded that such impairments were not severe through Plaintiff's date last insured. R. 17-20. Because the ALJ determined that Plaintiff did not have a severe impairment or combination of impairments, he denied Plaintiff's claim at step two and did not proceed further in the sequential evaluation process. *Id.*

## III. Issues

In challenging the Commissioner's denial of benefits, Plaintiff asserts the ALJ erred in concluding that his medically determinable impairments were not severe. ECF No. 15. The Court agrees with this allegation of error, and therefore reverses and remands for further proceedings.

## IV. Analysis

At step two of the sequential evaluation, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii); *Williams*, 844 F.2d at 750. In making such determination, the ALJ considers only Plaintiff's impairment(s) and evaluates "the impact the impairment would have on his ability to work." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997). A plaintiff's impairment or combination of impairments is severe if it "significantly limits [his] physical or mental ability to do basic work activities."[2] 20 C.F.R. § 404.1520(c); *Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016). An impairment is not severe if the medical evidence establishes only a slight abnormality or a

---

[2] Basic work activities are "the abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1522, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a work setting." SSR 85-28, 1985 WL 56856 at *3.

combination of slight abnormalities with a minimal effect on an individual's ability to work. *See* SSR 85-28, 1985 WL 56856 at *2. Plaintiff's burden at step two is a *de minimis* showing of impairment, but the Plaintiff must demonstrate "more than the mere presence of a condition or ailment." *Hinkle,* 132 F.3d at 1352.

The medical evidence prior to Plaintiff's date last insured reveals that Dr. Kenneth Trinidad performed a consultative physical examination in connection with Plaintiff's workers' compensation claim on June 2, 2016. R. 329-332. Plaintiff indicated that he sustained a back injury at work in January 2016 while lifting heavy boxes, and that he sustained neck and back injuries at work in February 2016 after a fall. R. 329. Plaintiff reported "fairly constant" pain and spasm in his neck and low back; hyperesthesia, weakness, spasticity, and involuntary movement in his legs; pain and paresthesia in his arms and hands; and numbness in his fingers. R. 330. Dr. Trinidad reviewed an April 2016 cervical spine MRI, which revealed protrusions at C4-5, C5-6, and C6-7, with cord edema at the C4-5 level, and an April 2016 lumbar spine MRI, which revealed herniated discs at L3-4, L4-5, and L5-S1 as well as postoperative laminectomy changes. R. 329.[3] On physical examination, Dr. Trinidad noted, *inter alia,* tenderness, spasm, and reduced range of motion in Plaintiff's cervical spine and lumbar spine, decreased sensation in his fingers bilaterally, and dysesthesias in his legs. R. 330. Dr. Trinidad indicted the physical examination findings were "quite serious and consistent with cord compression, in all probability coming from the cervical spine." R. 331. He assessed Plaintiff with a cervical spine injury with cervical disc derangement with cord compression and cervical myeloradiculopathy and a lumbar spine injury with herniated lumbar disc and lower extremity radiculitis. *Id*. Dr. Trinidad recommended referral to a surgeon for evaluation and treatment, noting that Plaintiff "in all probability will require cervical spine surgery initially and probably lumbar spine surgery at a later date." *Id.* He opined that Plaintiff

---

[3] These MRIs are not contained in the administrative record.

was not able to work and had been temporarily totally disabled ("TTD") since April 7, 2016. R. 331-32.

Plaintiff presented to Dr. Gregory Wilson on October 11, 2016, and reported neck, shoulder, and arm pain; numbness, tingling, and weakness in his arms; and loss of temperature regulation and proprioception in his legs. R. 289-91. Dr. Wilson reviewed a cervical spine MRI, which demonstrated a significant disc herniation at C4-5, with stenosis at C4-5, C5-6, and C6-7 resulting in spinal stenosis with cord compression. *Id.* Dr. Wilson also reviewed a lumbar spine MRI that demonstrated disc protrusions and postoperative changes at L3-L4 and L4-L5. *Id.* On physical exam, Dr. Wilson found reduced range of motion in Plaintiff's cervical spine and his exam of Plaintiff's lumbosacral spine was normal. R. 290. He assessed Plaintiff with cervical spondylosis with myelopathy, degenerated cervical disc, cervical radiculopathy, cervical spinal stenosis, cervical disc herniation, and intervertebral disc disorder with myelopathy (cervical region). R. 291. Dr. Wilson recommended cervical spine surgery, indicated Plaintiff's chance for complete recovery of spinal cord function was "poor," and opined he was TTD. *Id.*

Plaintiff underwent cervical spine surgery on November 4, 2016. R. 295-96. Dr. Wilson discharged Plaintiff the following day with a restriction of no lifting more than 5 pounds. R. 300. At a follow-up appointment on November 17, 2016, Plaintiff reported improvement with his pain, right leg strength, and gait spasticity, and he demonstrated neurologic improvement overall. R. 422-23. Dr. Wilson referred Plaintiff for physical therapy and indicated he remained TTD. *Id.* On January 16, 2017, Plaintiff reported improved gait spasticity but a persistent burning sensation in his hands. R. 427. Dr. Wilson noted physical therapy seemed to be helping Plaintiff significantly. *Id.* He prescribed a nerve pain medication and stated Plaintiff's work restrictions were "unchanged." R. 428. At a follow-up appointment on February 16, 2017, Plaintiff reported minimal neck pain and improvement with the abnormal sensations in his arms, and indicated he

was "mainly" taking his pain medication for his low back. R. 429. Plaintiff's cervical spine range of motion was within expected limits, his gait was normal, and he was able to stand without difficulty. *Id.* Dr. Wilson recommended that Plaintiff continue physical therapy as scheduled, and upon completion, undergo a functional capacity evaluation to determine his permanent work restrictions. *Id.* He opined Plaintiff remained TTD. *Id.* Dr. Wilson also indicated he would review Plaintiff's lumbar spine imaging "one more time," noting that such imaging revealed postoperative changes and disc bulging, but that he did not appreciate any significant pathology on his initial review. *Id.*

The Court concludes that the ALJ's decision at step two was not supported by substantial evidence and that the ALJ failed to discuss significantly probative evidence supporting Plaintiff's position. The ALJ's step-two conclusion is directly contradicted by objective medical evidence that he failed to discuss. Specifically, the ALJ ignored aspects of Dr. Trinidad's June 2016 examination and Dr. Wilson's treatment notes during the relevant period. Not only did Dr. Trinidad identify abnormal physical examination findings that the ALJ summarized in his decision, but Dr. Trinidad also indicated such findings were "quite serious," opined Plaintiff was unable to work, and indicated Plaintiff had been TTD since April 6, 2016. R. 329-32. Similarly, in addition to recording the physical examination findings the ALJ recounted, Dr. Wilson also indicated that Plaintiff's chances for complete recovery of spinal cord function was poor, consistently stated that Plaintiff was TTD, imposed a lifting restriction of less than 5 pounds following Plaintiff's cervical spine surgery, and recommended a functional capacity evaluation to determine permanent work restrictions after Plaintiff completed physical therapy for his neck. R. 291, 300, 422-31. Although this evidence supports Plaintiff's assertion that his impairments significantly limited his ability to do basic work activities, the ALJ did not mention or discuss any of these findings before dismissing Plaintiff's claim at step two. R. 19-20. Instead, the ALJ focused on positive notes and progress

7

to the exclusion of evidence that suggests Plaintiff's impairments cause more than a minimal effect on his ability to work.  Because the ALJ impermissibly cited to favorable evidence while ignoring the unfavorable evidence in dismissing Plaintiff's claim at step two, his decision is not supported by substantial evidence and he failed to apply proper legal standards in his analysis. *See Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

V.    **Conclusion**

For the foregoing reasons, the ALJ's decision finding Claimant not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 9th day of September, 2021.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**